# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:10-cv-00386

| | |
|---|---|
| **DONNA TATE**, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )     **ORDER**<br>) |
| **SALLIE MAE, INC.** and<br>**SLM FINANCIAL CORPORATION**, | )<br>)<br>) |
| Defendants. | )<br>) |

THE MATTER comes now before the Court upon Defendants', Sallie Mae, Inc. ("Sallie Mae") and SLM Financial Corporation ("SLM Financial"), Partial Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) [D.I. 28].

## I. LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the plaintiff's complaint. *See Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). When deciding a 12(b)(6) motion to dismiss, a court must "accept as true all factual allegations" presented in the complaint. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 589 (2007). In order to survive a 12(b)(6) motion to dismiss the plaintiff's complaint must contain more than mere legal conclusions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). A complaint must plead facts sufficient to "raise a right to relief above the speculative level" and to demonstrate that the claim is "plausible on its face." *Twombly*, 550 U.S. 544, 570 (2007). The claim is facially plausible when the factual content of the complaint allows the court to "draw the reasonable inference that the defendant is liable for

the misconduct." *Iqbal*, 129 S. Ct. 1937, 1949 (2009). Thus, if a complaint establishes a sufficient legal and factual basis for the claims asserted the motion to dismiss will be denied.

## II. FACTUAL BACKGROUND

On August 2, 2006, Plaintiff Donna Tate applied for a student loan in the amount of $9,018.00 with the Defendants for her daughter's education. (Am. Compl. ¶ 6). On her loan application Plaintiff stated that her income was $370.00 annually. (Am. Compl. ¶ 8). Plaintiff was approved for the loan and subsequently, on March 3, 2007, Plaintiff applied for another loan in the amount of $1,385.00. (Am. Compl. ¶¶ 11-13). Plaintiff alleges that Defendants' agents falsified her March 3, 2007 loan application by processing the application with Plaintiff's rent listed at $1,860.00 instead of with the amount, $18.60, Plaintiff originally wrote on the application. (Am. Compl. ¶¶ 14-15).

Plaintiff fell behind on her payments and was in default. (Am. Compl. ¶ 18). Subsequently, Plaintiff alleges that defendants' agents and employees began calling her regarding missed payments and that the phone calls escalated in December 2006 from occasional calls into daily and sometimes hourly calls to Plaintiffs' job and to her cell phone. (Am. Compl. ¶¶ 19, 20). Plaintiff claims that her requests to Defendants' agents and employees to stop calling her did not stop the calls and that her job forced her to take time off of work due to the continued calling. (Am. Compl. ¶¶ 21, 22).

In December of 2006, Plaintiff stopped working due to illness. (Am. Compl. ¶ 23). She called defendant Sallie Mae and made a request for forbearance due to her illness and inability to work. (Am. Compl. ¶ 24). Defendant refused the request for forbearance. (Am. Compl. ¶ 24).

Plaintiff alleges that on August 20, 2007, Defendants' agents and employees called the Plaintiff and cursed her using racial epithets, including repeated use of the word "nigger," and referring to her several times as a "bitch" and a "cunt." (Am. Compl. ¶¶ 24-29).

Plaintiff claims that Defendants agreed to subject her to profane, racist, and derogatory language by calling her with harassing frequency, accusing her of conduct that would tend to disgrace an individual, and repeatedly ignoring her instructions not to call her place of employment. (D.I. 31, p. 6). Allegedly, the actions of Defendants' employees were controlled by their personal motives. (D.I. 31, p. 6). Plaintiff claims that she suffered severe mental and emotional distress as a result of the constant, harassing, abusive, and demeaning calls. (Am. Compl. ¶ 31). Furthermore, Plaintiff claims that she was frightened, nervous, and feared for her safety due to the calls. (Am. Compl. ¶ 32). She also feared that a Sallie Mae representative or the police would knock on her door or arrest her due to the debt she owed. (Am. Compl. ¶ 33). Finally, Plaintiff claims that stress and depression caused by Defendants' harassment worsened her thyroid problems. (Am. Compl. ¶ 34).

### III. ANALYSIS

Defendants Sallie Mae and SLM Financial challenge the sufficiency of Plaintiff's pleading for civil conspiracy. Under North Carolina law no independent cause of action for civil conspiracy exists. *See Reid v. Holden*, 242 N.C. 408 (N.C. 1955); *Delk v. Arvinmeritor, Inc.*, 179 F. Supp. 2d 615, 629 (W.D.N.C. 2002). In order to state a claim for "damages caused by acts committed pursuant to a formed conspiracy," a plaintiff must demonstrate: "(1) an agreement between two or more persons (2) to do a wrongful act, (3) commission of some overt act by one member of the conspiracy in furtherance of the objectives, and (4) damage to the

plaintiff as a result of the actions of the conspirators. *Godfredson v. JBC Legal Group, P.C.*, 387 F. Supp. 2d 543, 549-441 (E.D.N.C. 2005), *citing Delk*, 179 F. Supp. 2d at 629.

Defendants initially argue that Plaintiff failed to state a cause of action for civil conspiracy because Plaintiff did not allege the existence of an agreement between the Defendants to commit an unlawful act. Plaintiff, in her Amended Complaint, alleges that Defendants agreed, through their agents, to do unlawful acts or to do lawful acts in an unlawful way that caused damages to the Plaintiff. (Am. Compl. ¶¶ 49-54). Although Plaintiff did not allege any specific facts to support the existence of an agreement between the Defendants, the Court does not find that this is sufficient grounds to dismiss the Complaint for the same reasoning followed by the Court in *Godfredson*. 387 F. Supp. 2d at 549 ("[T]he obligation to submit evidence, rather than relying upon allegations, is triggered by a motion for summary judgment, not a motion to dismiss for failure to state a claim."). *See also Dickens v. Puryear*, 302 N.C. 437, 276 S.E.2d 325m 337 (1981).

Defendants next argue that Plaintiff's claim for civil conspiracy fails because Sallie Mae cannot conspire with itself due to the intra-corporate conspiracy doctrine. Plaintiff claims that the intra-corporate immunity doctrine is inapplicable because an exception to the doctrine is recognized where the Plaintiff alleges that the corporate employees were controlled by personal motives or where their actions exceeded the bounds of their authority. *Bear Hollow, L.L.C. v. Moberk, L.L.C.*, 2006 WL 1642126, 13 (W.D.N.C. 2006).

The intra-corporate immunity doctrine states that a corporation cannot successfully conspire with its own officers, employees, or agents. *See Godfredson*, 387 F. Supp. 2d at 549; *see also ePlus Technology, Inc. v. Aboud*, 313 F.3d 166, 169 (4th Cir. 2002) ("[U]nder the intra-corporate immunity doctrine, acts of corporate agents are acts of the corporation itself, and

corporate employees cannot conspire with each other or with the corporation."). Furthermore, a corporation and its wholly-owned subsidiaries are incapable of conspiring together. *See e.g., Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 777 (1984). Similarly, a corporation and its wholly owned subsidiary cannot conspire for the purposes of civil conspiracy to commit unlawful acts. *Godfredson*, 387 F. Supp. 2d 543, 549; *Aboud*, 313 F.3d 166, 169; *Greenville Publishing Co., Inc. v. Daily Reflector, Inc.*, 496 F.2d 391, 399 (4th Cir. 1974). An exception to the intra-corporate immunity doctrine "may be justified when the officer [or employee] has an independent personal [or financial] stake in achieving the corporation's illegal objective." *Greenville Publishing*, 496 F.2d at 399. However, the Fourth Circuit limited the independent financial stake exception so that "it applies only where a co-conspirator possesses a personal stake independent of his relationship to the corporation." *Aboud*, 313 F.3d at 179. Employees of a corporation generally have a financial stake in that corporation and something more, a financial stake in the outcome of the alleged conspiracy separate from and independent to the financial stake in the corporation, is required to invoke the exception to the intra-corporate conspiracy doctrine. *See Godfredson*, 387 F. Supp. 2d at 550.

Here, the intra-corporate immunity doctrine is applicable because Sallie Mae is a wholly-owned subsidiary of SLM Corporation and SLM Financial is also a subsidiary of the same parent corporation. [D.I. 26, 27]. Plaintiff's argument, that agents of the Defendants were personally motived to harass her into paying debts because "debt collectors" are personally motivated to use abuse methods to collect debts in order to receive more financial consideration from their employer, is not enough to invoke the independent financial stake exception to the intra-corporate immunity doctrine. Plaintiff did not allege any financial stake on the part of the Defendants independent of Defendants' relationship to the parent corporation. Thus, Plaintiff's

pleading fails to overcome the general rules that: (1) a corporation cannot conspire with its own officers, employees, and agents, and (2) that a corporation and its wholly-owned subsidiaries are incapable of conspiring together. Therefore, Plaintiff's claim of civil conspiracy fails.

For the reasons set out herein, the partial Motion to Dismiss is GRANTED.

Signed: August 19, 2011

Graham C. Mullen
United States District Judge